IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DWIGHT H. DAVIS,                          )
                                          )
              Plaintiff,                  )
                                          )
       v.                                 )       Civil Action No.: 2:16cv583-MHT-WC
                                          )
ALABAMA DEPARTMENT OF                     )
TRANSPORTATION, *et al.*,                 )
                                          )
              Defendants.                 )

# RECOMMENDATION OF THE MAGISTRATE JUDGE

On July 18, 2016, Plaintiff filed a complaint against the Alabama Department of

Transportation ("ALDOT") and five individual defendants alleging four claims: (1)

retaliation and retaliatory hostile work environment under Title VII and § 1983; (2)

negligent hiring, training, supervision, and retention; (3) defamation; and (4) intentional

infliction of emotional distress. *See* Doc. 1. On October 3, 2016, Defendants filed a

Motion to Dismiss (Doc. 22) Plaintiff's complaint pursuant to Federal Rule of Civil

Procedure 12(b)(1) and 12(b)(6). The undersigned entered an Order (Doc. 24) directing

Plaintiff to show cause as to why the motion should not be granted. Plaintiff filed a

Response in Opposition (Doc. 26) to the motion, along with a first amended complaint

(Doc. 25).

Plaintiff's first amended complaint alleges four claims: (1) retaliation and retaliatory

hostile work environment under Title VII and § 1983; (2) § 1983 claims for deprivation of

Plaintiff's federal statutory rights by Defendants in their individual capacities; (3) civil

conspiracy; and (4) defamation. *See* Doc. 25. Plaintiff filed the first amended complaint on November 7, 2016—thirty-five days after Defendants moved to dismiss Plaintiff's original complaint. *See* Docs. 22, 25. On November 21, 2017, Defendants moved to strike Plaintiff's first amended complaint for failure to comply with Federal Rule of Civil Procedure 15(a)(2)[1], *see* Doc. 29, along with a second motion to dismiss Plaintiff's first amended complaint, *see* Doc. 30. The undersigned again entered an Order (Doc. 31) directing Plaintiff to show cause as to why the motion to strike should not be granted.[2] Plaintiff did not file a response within the time frame allotted by the court. Thirty-eight days after the deadline to respond passed, Plaintiff filed a motion to file a response out of time (Doc. 32), a Response in Opposition (Doc. 33) to Defendants' second motion to dismiss, and Plaintiff's counsel filed a motion to withdraw (Doc. 34).

Upon consideration of Plaintiff's motions, the undersigned set an *ex parte* hearing for January 26, 2017. *See* Doc. 35. Neither Plaintiff nor his counsel appeared at the hearing. Thus, the undersigned reset the hearing for February 2, 2017. Doc. 37. At that hearing, Plaintiff's counsel informed the court that she was closing her practice, and that another attorney would be taking over Plaintiff's representation. After receiving that information, the undersigned entered an Order (Doc. 43) setting a motions hearing for

---

[1] Federal Rule of Civil Procedure 15(a)(1) allows a plaintiff to amend his complaint once without court permission as a response to a motion to dismiss, so long as the amendment occurs within twenty-one days after the motion to dismiss is served. If a plaintiff wishes to amend outside of that time frame, Plaintiff must receive permission from the court or written consent from the opposing party. Fed. R. Civ. P. 15(a)(2).

[2] The undersigned did not enter a show cause as to Defendants' motion to dismiss Plaintiff's first amended complaint as the motion to strike the first amended complaint was pending and would potentially moot Defendants' motion to dismiss the first amended complaint.

February 13, 2017, to address Defendants' Motion to Strike Plaintiff's amended complaint (Doc. 29) and Plaintiff's Motion for Extension to File Out of Time (Doc. 32).[3]

Plaintiff, Plaintiff's new counsel, and Defendants' counsel appeared at the February 13th motions hearing. After considering argument from both sides, the undersigned entered an Order (Doc. 47) directing Plaintiff to file a second amended complaint on or before February 17, 2017. The undersigned also denied Defendants' Motion to Strike Plaintiff's Amended Complaint (Doc. 29) and Plaintiff's Motion to File Response Out of Time (Doc. 32) as moot, and directed Defendants to inform the court whether, after reviewing Plaintiff's Second Amended Complaint, they intended to stand on their previously filed motions to dismiss (Docs. 22, 30), or whether they wished to file a new motion to dismiss. Doc. 47.

On February 21, 2017, four days after the deadline set by the undersigned, Plaintiff filed his Second Amended Complaint (Doc. 48), which is substantially the same as Plaintiff's first amended complaint. *Compare* Doc. 25 *with* Doc. 48. In compliance with the court's previous Order (Doc. 47), Defendants informed the court that they intended to stand on their previous motions to dismiss (Docs. 22, 30) instead of filing a new motion to dismiss. The undersigned entered an Order (Doc. 50) directing Plaintiff to show cause, on or before March 23, 2017, why Defendants' motions should not be granted.

---

[3] The undersigned reserved ruling on Plaintiff's counsel's motion to withdraw (Doc. 34) until Plaintiff's new counsel appeared. The undersigned granted the motion on February 13, 2017, at the motions hearing. *See* Doc. 47.

On March 23, 2017—the day Plaintiff's response to Defendants' motion to dismiss was due—Plaintiff filed a motion seeking a three-week extension of time to file his response. *See* Doc. 51. Plaintiff cited that the extension was needed because of the "complex nature" of the claims in the case which his counsel needed more time to pursue. *See generally id*. The undersigned entered a show cause Order (Doc. 52), and Defendants responded (Doc. 53) in opposition to the extension. After hearing from Defendants and considering the substantial amount of leeway already afforded Plaintiff in litigating his case, the undersigned denied Plaintiff's motion for an extension of time to respond. In denying that motion, the undersigned specifically noted that (1) Plaintiff has already been afforded much liberty in the proceedings to extend deadlines, (2) Plaintiff waited until the eleventh-hour to file his motion, despite knowing Defendants' arguments for dismissal no later than February 10, 2017, when she appeared in the case, and (3) the unfairness to Defendants to continue to delay ruling on their motion to dismiss. *See* Doc. 54.

Accordingly, before the court is Defendants' motion to dismiss Plaintiff's Second Amended Complaint, as construed from Defendants' Notice of Intent (Doc. 49) to stand on their previously filed motions to dismiss (Doc. 22, 30). As noted above, Plaintiff has not responded to this motion; thus, it is technically unopposed. Nonetheless, to the extent the undersigned applies the arguments presented in Defendants' first motion to dismiss (Doc. 22), the undersigned will consider Plaintiff's response in opposition to those arguments (Doc. 26).[4] Defendants' motion to dismiss Plaintiff's second amended

---

[4] The undersigned will not consider Plaintiff's response in opposition to Defendants' motion to dismiss Plaintiff's first amended complaint, as that response was filed thirty-eight days late. *See* Doc. 34.

complaint is thus ripe for recommendation to the United States District Judge.[5]  For the reasons that follow, the undersigned recommends that Defendants' motion to dismiss Plaintiff's second amended complaint, as construed, be granted.[6]

## I.    PLAINTIFF'S STATEMENT OF FACTS & CLAIMS

Prior to delving into the applicable law and analysis in this case, the undersigned will provide a brief recitation of the facts, taken in the light most favorable to Plaintiff, to provide context.

Plaintiff is a fifty-nine-year-old African-American male who is employed by Defendant Alabama Department of Transportation ("Defendant ALDOT").  Doc. 48 at 3, ¶ 8.  Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination—Number 846-2012-13854—on August 13, 2012, alleging discrimination based upon disability and retaliation.  *Id*. at 5, ¶ 17.  After the charge was filed, Defendants "began a series of unlawful retaliatory actions," which continued throughout the entire time the charge was being investigated.  *Id*. at 5, 13 ¶ 16, 60.  On September 28, 2015, the EEOC issued a right-to-sue letter for the 2012 charge.[7]  *See* Doc. 22-1 at 2.  Plaintiff then

---

[5] On November 11, 2016, the United States District Judge referred this case to the undersigned United States Magistrate Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate."  Doc. 28.

[6] As a matter of housekeeping, the undersigned would note that Defendants' previously pending motions to dismiss (Docs. 22, 30) should be denied as moot.  Plaintiff's Second Amended Complaint supersedes Plaintiff's First Amended Complaint, which supersedes Plaintiff's original Complaint.  Accordingly, Defendants' motions to dismiss those previous complaints are now moot.

[7] Plaintiff did not attach the right-to-sue letter from the 2012 EEOC charge in his complaint, nor did he allege the date he received such notice.  Defendants, however, attached a copy of the right-to-sue letter with their motion to dismiss Plaintiff's original complaint.  *See* Doc. 22-1 at 2.  Because EEOC actions are matters of public record and the authenticity of this document is not disputed, the undersigned will take

completed an EEOC Intake Questionnaire on November 22, 2015, which he attaches with his second amended complaint, *see* Doc. 48 at 19-21. Although he does not attach his formal charge of discrimination upon which this suit is based, Plaintiff alleges that he filed the charge—Number 420-2016-00475—on November 24, 2015. Doc. 48 at 5, ¶ 16. The EEOC issued a right-to-sue letter for the 2015 charge on April 13, 2016. *Id*. at 17.

In March 2014, Defendant Alice Rowe ("Defendant Rowe"), Plaintiff's supervisor, "interfered with Plaintiff's work and required Plaintiff to apply a formula to a project which she knew or should have known would have resulted in false results." *Id*. at 10, ¶ 47. In response to Defendant Rowe's direction, Plaintiff sent an email to Defendant Clarence Hampton ("Defendant Hampton"), Defendant Rowe's manager, setting forth his concerns and asking for clarification. *Id*. Defendant Rowe and Defendant Hampton "subjected Plaintiff to a verbal reprimand" as a result of the incident. *Id*. at 10, ¶ 48.

On or about December 1, 2014, Defendant Rowe and Defendant Hampton "libelously published for Plaintiff's co-workers to hear that Plaintiff committed an act of violence in the workplace." *Id*. at 5, ¶ 17. This false accusation occurred "after Plaintiff refused to sign a written warning" that was issued to him after "he asked [Defendant Rowe] to sign off on a report confirming a work related [back] injury[,]" and she refused. *Id*. at 5, ¶¶ 18-19. Plaintiff's injury occurred while working, without assistance, on a "1392 report" for sixteen weeks. *Id*. at 6, ¶ 23. Plaintiff developed "chronic back injury and pain"

---

judicial notice of the document. *See, e.g.*, *Mann v. Green,* No. CV407-140, 2008 WL 1766779, at *1 n. 2 (S.D. Ga. Apr. 17, 2008) (stating that because the plaintiff's EEOC actions were matters of public record, the court could take judicial notice of the EEOC documents without converting the motion to dismiss into a motion for summary judgment); *Sequera v. Hunter Douglas Fabrication Co.,* 184 F. Supp. 2d 1227, 1229 n. 2 (M.D. Fla. 2002).

as a result of "constant sitting and leaning forward over his desk" to complete the report. *Id*. at 5-6, ¶¶ 20-23. Plaintiff "worked overtime daily and into the night in order to complete the report in a timely manner[,]" and was threatened with termination if he did not finish on time. *Id*. at 6, ¶¶ 24, 25. A hearing was held in December 2014 addressing the issue of workplace violence, and Plaintiff was "cleared [ ] of all allegations." *Id*. at 8, ¶ 39.

At some unidentified point in time, Plaintiff was pressured by Defendant Hampton to falsify a Title VI annual report regarding minority participation. *Id*. at 7, ¶¶ 28-29. After informing Defendant Rowe that "no known good faith effort to acquire minority participation" had been made, Plaintiff was "harassed and threatened with a reprimand if he did not comply with the unlawful request, to the point Plaintiff experienced stress related illnesses, including headaches." *Id*. at 10-11, ¶ 51.

At another unidentified point in time, Defendant Lamar Woodham ("Defendant Woodham"), the Assistant Director of Administration for ALDOT, and Defendant Steven Dukes ("Defendant Dukes"), the Human Resources Representative for ALDOT, "directed Plaintiff to be suspended based on allegations made by the individuals who victimized Plaintiff." *Id*. at 13, ¶ 61. Defendant Hampton ordered that "Plaintiff not receive an annual raise in 2015, based on allegations made by the individuals who victimized Plaintiff." *Id*. at 13, ¶ 62. Plaintiff discussed the retaliatory conduct with Defendant Woodham and Defendant John Cooper ("Defendant Cooper"), the Director of ALDOT, but neither intervened on his behalf. *Id*. at 7, ¶ 30.

Based upon these facts, Plaintiff asserts four claims in his Second Amended Complaint: (1) retaliation and retaliatory hostile work environment under Title VII and §

1983; (2) § 1983 claims for deprivation of Plaintiff's federal statutory rights by Defendants in their individual capacities; (3) civil conspiracy; and (4) defamation.

## II. STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). Generally, jurisdictional challenges are addressed under Rule 12(b)(1), whereas Rule 12(b)(6) provides for dismissal for failure of a party to state a claim for which relief can be granted. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

### A. Rule 12(b)(1)

A Rule 12(b)(1) motion directly challenges the district court's subject matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *Gilmore v. Day*, 125 F. Supp. 2d 468, 470 (M.D. Ala. 2000). This challenge may take the form of a facial or factual attack. *Makro v. Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)); *Stalley v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *McElmurray*, 501 F.3d at 1251).

A facial attack is based solely on the pleadings and requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Stalley*, 524 F.3d at 1232-33; *Morrison*, 323 F.3d at 925 n. 5; *Lawrence v. Dunbar*, 919 F.2d 1525,

1529 (11th Cir. 1990). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)); *see also Houston v. Marod Supermarkets*, 733 F.3d 1323, 1335 (11th Cir. 2013) (The Court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing a Rule 12(b)(6) review.).

On the other hand, a factual attack challenges "subject matter jurisdiction in fact, irrespective of the pleadings." *Morrison*, 323 F.3d at 925. On a Rule 12(b)(1) factual attack, the court "may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56." *Lawrence*, 919 F.2d at 1529. Further, in resolving a factual attack, the court "may consider extrinsic evidence such as testimony and affidavits." *Makro*, 543 F.3d at 1258 (quoting *Morrison*, 323 F.3d at 925 n. 5); *accord Stalley*, 524 F.3d at 1233; *Miccosukee Tribe of Indians of Fla. v. U.S., E.P.A.*, 105 F.3d 599, 603 (11th Cir. 1997). The trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case without presuming the truthfulness of the plaintiff's allegations. *Makro*, 543 F.3d at 1528 (internal quotations omitted); *see also Willett v. United States*, 24 F. Supp. 3d 1167, 1173 (M.D. Ala. 2014) (stating same). In other words, "the district court should apply a summary judgment standard when ruling on the motion to dismiss as a factual attack on subject matter jurisdiction." *Miccosukee Tribe*, 105 F.3d at 603 (citing *Lawrence*, 919 F.2d at 1530).

**B. Rule 12(b)(6)**

When considering a Rule 12(b)(6) motion to dismiss, a court accepts the nonmovant's allegations as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), and construes the pleading in the nonmovant's favor, *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of the pleading, the court is guided by a two-prong approach: (1) the court is not bound to accept conclusory statements of the elements of a cause of action, and (2) where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* 556 U.S. 662, 663-64 (2009). "[A nonmovant's] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). To survive a motion to dismiss, a pleading need not contain "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## III.  DISCUSSION

### A. Count One: Plaintiff's 42 U.S.C. § 1983 Claims for Retaliation and Retaliatory Work Environment Against Defendant ALDOT and the Individual Defendants in their Official Capacities.

Plaintiff brings claims for "Retaliation and Retaliatory Hostile Work Environment Under . . . Section 1983" against Defendant ALDOT and against the five individual Defendants in their official capacities. *See* Doc. 48 at 8-11. Plaintiff seeks "declaratory and injunctive relief, compensatory and punitive damages, costs, attorney's fees, and any

and all such other relief the trier-of-fact may assess." *Id*. at 11, ¶ 55. With regards to

Plaintiff's request for injunctive relief, Plaintiff requests the court:

A. Grant a permanent injunction enjoining Defendant, their officers, successors, assigns and all persons in acting in concert or participation with it, from engaging further in its discriminatory treatment on the basis of race;

B. Order Defendant to institute and carry out policies, practices and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing a policy against race discrimination in the work place and against retaliation for engaging in protected activities[.]

*Id*. at 15-16.

Defendants move the court to dismiss Plaintiff's § 1983 claims against Defendant

ALDOT and the individual Defendants in their official capacities based upon Eleventh

Amendment immunity. Defendants' argument will be analyzed under the Rule 12(b)(1)

standard. *See Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 (11th Cir. 2010) ("A

dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no

subject-matter jurisdiction exists.").[8]

---

[8] Courts have addressed immunity issues under both Rule 12(b)(1) and Rule 12(b)(6). *Compare Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.,* 208 F.3d 1308, 1310 (11th Cir. 2000) (reviewing district court's dismissal based on the State's Eleventh Amendment immunity under Rule 12(b)(6) for failure to state a claim upon which relief can be granted), *with Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.,* 633 F.3d 1297, 1304 (11th Cir. 2011) ("The [district] court dismissed the claims against the Board of Regents, the Members, and the University Officials, who were sued in their official capacities, under Rule 12(b)(1) on the Eleventh Amendment immunity ground.").

The Eleventh Circuit, in the unpublished *Thomas* opinion cited above, recently indicated that Eleventh Amendment immunity analysis is more appropriately conducted under Rule 12(b)(1) where immunity does not implicate the merits of Plaintiff's claim. *See Thomas,* 364 F. App'x 600, 601 (11th Cir. 2010) (citing *Bennett v. United States,* 102 F.3d 486, 488 n. 1 (11th Cir. 1996)); *Bennett,* 102 F.3d at 488 ("Rule 12(b)(1) of the Federal Rules of Civil Procedure provides a vehicle for the dismissal of actions for lack of subject matter jurisdiction. Nevertheless, where—as here—the existence of subject matter jurisdiction is

## 1. Eleventh Amendment Immunity Bars Plaintiff's 42 U.S.C. § 1983 Claims against Defendant ALDOT.

Defendants argue that Plaintiff cannot pursue federal claims against Defendant ALDOT because the Eleventh Amendment acts as a complete bar to lawsuits against State of Alabama agencies. Doc. 30 at 6.

The Eleventh Amendment reads as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

"Although the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1980)). "Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state *or its agencies* in federal court." *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986) (citing *Edelman v. Jordan,* 415 U.S. 651, pp (1974)) (emphasis added). "[A] suit in which the State *or one of its agencies*

---

*inextricably intertwined with material facts affecting the merits of the claim,* a district court must be guided by the standard for summary judgment motions under Fed. R. Civ. P. 56." (emphasis added) (citations omitted)). Here, because the analysis of Defendants' immunity arguments is not "inextricably intertwined with material facts affecting the merit of the claim," the undersigned feels it is appropriate to consider those arguments under the Rule 12(b)(1) standard. *See, e.g., Ostroff v. State of Fla., Dep't of Health & Rehab. Servs.,* 554 F. Supp. 347, 355 n. 13 (M.D. Fla. 1983) (electing to analyze the state agency defendant's Eleventh Amendment defense under Rule 12(b)(1)).

or departments is named as defendant is proscribed by the Eleventh Amendment" regardless of the nature of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (emphasis added).

Because neither Congress has abrogated nor the State of Alabama has waived its Eleventh Amendment immunity in § 1983 cases, *see Carr v. Alabama*, 49 F.3d 1490, 1502 (11th Cir. 1995), and because ALDOT is an agency of the State of Alabama, *see* Ala. Code § 3-1-20 (1975), the Eleventh Amendment protects Defendant ALDOT from all liability under § 1983. *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1310 (M.D. Ala. 2000) (citing *Wright v. Butts*, 953 F. Supp. 1352, 1358 (M.D. Ala. 1996)). This is true as to the monetary relief sought by Plaintiff against Defendant ALDOT, as well as the declaratory and prospective injunctive relief sought. *R.E. Grills Constr. Co., Inc. v. ALDOT*, 198 F. Supp. 2d 1297, 1300-01 (N.D. Ala. 2002) (holding that Eleventh Amendment immunity applied to ALDOT as to Plaintiff's prospective injunctive relief). Therefore, the undersigned recommends that the court dismiss Plaintiff's § 1983 claims for retaliation and retaliatory hostile work environment against Defendant ALDOT, as it is proscribed by the Eleventh Amendment.

> **2. Eleventh Amendment Immunity Bars Plaintiff's 42 U.S.C. § 1983 Claims against Individual Defendants for Monetary and Injunctive Relief.[9]**

---

[9] Plaintiff states he is requesting both declaratory and injunctive relief. However, Plaintiff's complaint is void of any specific request for declaratory relief. Instead, Plaintiff's complaint asks the court to grant a permanent injunction enjoining Defendants "from engaging in further discriminatory treatment on the basis of race[,]" and to order Defendants "to institute and carry out policies, practices and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices[.]" Doc. 48 at 15-16. Because these requests are not declaratory in nature, the undersigned construes Plaintiff's request as a request for injunctive relief only.

Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court. *See e.g., Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Here, individual Defendants Cooper (Director of ALDOT), Hampton (Bureau Chief of ALDOT), Rowe (Plaintiff's Manager at ALDOT), Woodham (Assistant Director of Administration of ALDOT), and Dukes (Human Resources Representative for ALDOT) are sued in their official capacities. Doc. 1 at 3-4. Within Plaintiff's § 1983 claims against these individual Defendants in their official capacities, Plaintiff states that he seeks "compensatory and punitive damages." Doc. 48 at 11, ¶ 55. Clearly, such claims for monetary relief against the individual Defendants in their official capacities are barred by the Eleventh Amendment. *See Carr,* 916 F.2d at 1524 (noting that, where an award of damages would be paid by the state, the state is considered the real party in interest and the Eleventh Amendment would bar such suits); *see also Will v. Michigan Dep't of State Police*, 492 U.S. 58, 72 (1989) (because a suit for money damages against a state official in his or her official capacity "is not a suit against the official but rather is a suit against the official's office," individual defendants in their official capacities are not considered "persons" within the meaning of 42 U.S.C. § 1983).

However, to the extent Plaintiff seeks prospective injunctive relief against the individual Defendants in their official capacities, such suit is generally not barred. *See R.E. Grills*, 198 F. Supp. 2d at 1301 (holding that claims against individual defendants in official capacities were barred except as to claims for prospective injunctive relief); *Morgan v. State of Ala.*, 5 F. Supp. 2d 1285, 1296 (M.D. Ala. 1998) ("Despite prohibiting § 1983 claims for monetary damages against individuals in their official capacities, '[the] Eleventh

Amendment does not insulate official capacity defendants from actions seeking prospective injunctive relief.' *Lassiter* [*v. Ala. A&M Univ., Bd. of Trustees*], 3 F.3d [1482,] 1485 [11th Cir. 1993].").  As explained by this court in *Wright v. Butts,*

> in interpreting the Eleventh Amendment, courts distinguish between suits against a state or state agency and those against state employees. When federal rights are asserted against state employees sued in their official capacities, the Eleventh Amendment prohibits claims for retrospective monetary relief (i.e., compensatory and punitive damages) paid from the state treasury *but not prospective equitable relief* (i.e., declaratory and injunctive relief). *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 . . . (1908) (holding that a plaintiff seeking prospective relief from the state must name as a defendant a state official rather than the state or a state agency directly even though in reality the suit is against the state).

953 F. Supp. at 1358–59 (emphasis added).  Importantly, however, under *Ex parte Young,* the prospective injunctive relief sought must be in order to "end a *continuing* violation of federal law."  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)) (emphasis added).  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an *ongoing* violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296, 298–299 (1997)) (emphasis added).

Here, while Plaintiff requests injunctive relief that is arguably prospective in nature, such relief is not sought to prevent a continuing violation of federal law.  Throughout Plaintiff's complaint, Plaintiff refers to the retaliatory actions of Defendants that occurred

15

in the past, specifically stating that such conduct "continued the entire time the [2012] Charge of Discrimination was being investigated." Doc. 48 at 13, ¶ 60. Indeed, Plaintiff points to retaliatory conduct including a written warning he received, a false accusation that he committed workplace violence, a requirement that he complete a certain work-related report without assistance, threats of termination, a suspension, and a failure to receive a 2015 annual raise—all of which occurred in or before 2015, and, therefore, prior to Plaintiff's suit here in July 2016. *See generally* Doc. 48. Not once does Plaintiff allege, even generally, that Defendants are *continuing* to retaliate against him for engaging in protected activity, nor does Plaintiff allege any facts upon which the undersigned can infer that such conduct is ongoing. Thus, based upon *Ex parte Young*, as discussed in *Wright*, Plaintiff's § 1983 claims seeking injunctive relief against individual Defendants Cooper, Hampton, Rowe, Woodham, and Dukes in their official capacities are prohibited, as the injunctive relief requested is not designed to prevent continuing violations of federal law.[10]

### 3. Conclusion

---

[10] The undersigned also notes Plaintiff's request for the court to grant a permanent injunction against Defendants "from engaging further in its discriminatory treatment on the basis of race" is a requirement for Defendants to do nothing more than obey the law. Such requests for injunctions are prohibited. *Elend v. Basham,* 471 F.3d 1199, 1209 (11th Cir. 2006) ("It is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible."). Further, Plaintiff's requests for injunctive relief are peculiar insofar as they request the court (1) enjoin Defendants from engaging in "discriminatory treatment on the basis of race" and (2) order Defendant "to institute and carryout policies, practices and programs" related to "equal employment opportunities and which eradicate past and present unlawful employment practices related to race discrimination[.]" Doc. 48 at 15-16. Curiously, these requests do nothing to prevent Defendants from engaging in the type of conduct Plaintiff complains about—i.e., retaliation and a retaliatory hostile work environment. At only one point in his request for injunctive relief does Plaintiff ask the court to address Defendants' retaliatory conduct. In that request, Plaintiff asks the court to order Defendants to "implement[ ] a policy . . . against retaliation for engaging in protected activities[.]" *Id*. at 16. Again, such request, as a practical matter, is simply a broad request for Defendant to do nothing more than obey the law. *See* Fed. R. Civ. P. 65(d).

Accordingly, the undersigned recommends that Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendant ALDOT, and Defendants' motion to dismiss Plaintiff's § 1983 claims against the individual Defendants in their official capacities, are due to be granted.

### B. Count One: Plaintiff's Title VII Claim for Retaliation and Retaliatory Hostile Work Environment Against Defendant ALDOT and the Individual Defendants in their Official Capacities.

In addition to § 1983 claims against Defendants, count one of Plaintiff's complaint asserts a claim for "Retaliation and Retaliatory Hostile Work Environment Under . . . Title VII" against Defendant ALDOT and against the individual Defendants in, presumably, their individual and official capacities. *See* Doc. 48 at 8-11. Again, Plaintiff seeks "declaratory and injunctive relief, compensatory and punitive damages, costs, attorney's fees, and any and all such other relief the trier-of-fact may assess." *Id*. at 11, ¶ 55.

Defendants argue that Plaintiff did not properly exhaust his administrative remedies as to Charge Number 420-2016-00475 because Plaintiff merely filed an EEOC Intake Questionnaire—not a formal charge. Doc. 30 at 4-6. Defendants' argument will be addressed under the Rule 12(b)(6) standard.[11]

---

[11] Though required, exhaustion of administrative remedies is not a "jurisdictional requirement" such that it would divest the court of subject-matter jurisdiction. *See Ramirez v. Sec'y U.S. Dep't of Transp.,* 686 F.3d 1239, 1243 (11th Cir. 2012); *Zipes v. Trans World Airlines, Inc., et al.,* 455 U.S. 385, 393 (1982) (holding "that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); *Jackson v. Seaboard Coast Line R. Co.,* 678 F.2d 992, 1003 (11th Cir. 1982) ("[T]he conditions precedent to filing a Title VII suit are not jurisdictional prerequisites."). Nevertheless, a plaintiff who does not plausibly allege that he successfully exhausted administrative remedies cannot state a claim under Title VII, and his claims would therefore be subject to dismissal pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6); *Murphy v. McHugh*, Case No.: 5:14-cv-2489-RDP, 2016 WL 4259553, at *9 (N.D. Ala. Aug. 12,

Before turning to Defendants' argument, the undersigned first notes that, to the extent Plaintiff is asserting Title VII claims against the individual Defendants in their *individual* capacities, those claims should be dismissed as "'[t]he relief granted under Title VII is against the employer, not [against] individual employees whose actions would constitute a violation of the Act.'" *Hinson v. Clinch Cty. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (holding "[i]ndividual capacity suits under Title VII are . . . inappropriate."). To the extent Plaintiff is asserting such claims against the individual Defendants in their *official* capacities, such claims should be dismissed as redundant to the Title VII claims asserted against Defendant ALDOT. *Smiley v. ALDOT*, 778 F. Supp. 2d 1283, 1295-96 (M.D. Ala. 2011) (holding that Title VII claims against individual employees in their official capacities were legally claims against ALDOT); *Simpson v. State of Ala. Dep't of Human Res.*, Case No.: 4:13-cv-01450-SGC, 2017 WL 514056, at *7 (N.D. Ala. Feb. 8, 2017) (holding that when Title

2016) ("Thus, a failure to satisfy EEO prerequisites are typically best resolved as part of a Rule 12(b)(6) motion to dismiss rather than a Rule 12(b)(1) motion.").

Although Defendants' motion is a 12(b) motion, Eleventh Circuit precedent permits the court to consider documents outside of Plaintiff's complaint. *See Bryant v. Rich,* 530 F.3d 1368, 1375 (11th Cir. 2008) (noting that it is not uncommon for judges to resolve factual disputes under Rule 12(b) where the motion to dismiss is not an adjudication on the merits); *Duberry v. Postmaster Gen.*, 652 F. App'x 770, 772 (11th Cir. 2016). *Bryant* directs district courts to resolve factual disputes as to exhaustion of administrative remedies on a motion to dismiss if (1) the factual disputes do not decide the merits of the claims, and (2) the parties had a sufficient opportunity to develop the record. *Tillary v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 423 (11th Cir. 2010) (citing *Bryant*, 530 F.3d at 1368). Here, resolving Defendants' motion will not require the undersigned to consider the merits of Plaintiff's claim, and the undersigned gave Plaintiff notice that it was considering Defendants' motion to dismiss and an opportunity to develop the record. *See* Doc. 50. Accordingly, the undersigned will resolve factual disputes, if any, regarding Plaintiff's exhaustion of administrative remedies.

VII claims are asserted against individual employees in their official capacities, and those claims are also asserted against the employer, the claims against the individual employees are essentially claims against the employer and thus redundant).

Having determined that Plaintiff's Title VII claim can proceed only, if at all, against Defendant ALDOT, the undersigned will now examine whether Plaintiff failed to exhaust his administrative remedies prior to filing suit.[12]

"Before instituting a Title VII action in federal district court, a private plaintiff must file an [Equal Employment Opportunity Commission ("EEOC")] complaint against the discriminating party and receive statutory notice from the EEOC of [ ] [his] right to sue the respondent named in the charge." *Forehand v. Fla. State Hosp. at Chattahoochee,* 89 F.3d 1562, 1567 (11th Cir. 1996); 42 U.S.C. § 2000e–5(f)(1). As explained by the Eleventh Circuit, "[t]he purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1279 (11th Cir. 2004) (alteration in original).

---

[12] Notably, it is unnecessary for a plaintiff to exhaust administrative remedies prior to pursuing a retaliation claim where, like here, a plaintiff's retaliation claims are based upon an earlier EEOC charge. *Houston v. Army Fleet Servs., Inc*., 509 F. Supp. 2d 1033, 1043 (M.D. Ala. 2007); *Baker v. Buckeye Cellulose Corp*., 856 F.2d 167, 169 (11th Cir. 1988). However, if Plaintiff took that position, such an argument would be nonsensical under these circumstances, and contrary to what Plaintiff alleges in his complaint. First, Plaintiff clearly states that the 2015 EEOC Charge is the basis for his suit in this court. Doc. 1 at 5, ¶ 16 ("After the [2012] charge was filed, Defendants began a series of unlawful retaliatory actions, which led to Plaintiff filing the Charge of Discrimination on which this lawsuit is based (Charge Number 420-2016-00475)[.]") Second, Plaintiff received a right-to-sue letter for the 2012 EEOC Charge on September 28, 2015. Doc. 22-1 at 2. He filed suit in this court on July 18, 2016, which is clearly outside of the ninety-day window for timely submitting a Title VII claim based upon the 2016 right-to-sue letter, particularly considering that all of the alleged retaliatory conduct occurred prior to the issuance of the September 2015 right-to-sue-letter, and, for the most part, prior to 2015 in general.

The filing of a charge with the EEOC initiates "an integrated, multi-step enforcement procedure" that enables the EEOC to detect and remedy various discriminatory employment practices. *EEOC v. Shell Oil Co.,* 466 U.S. 54, 62 (1984). This process includes the following steps: (1) prompt notice from the EEOC to the employer that a charge has been filed; and (2) investigation of the charge by the EEOC. *See Shell Oil Co.,* 466 U.S. at 63. The EEOC assumes the burden of "promptly notify[ing] the respondent that a charge has been filed." 29 C.F.R. § 1626.11.

Importantly, a charge of discrimination must be properly executed. EEOC regulations require an EEOC charge to be signed and verified. 42 U.S.C. § 2000e-5(b) ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires."); 29 C.F.R. § 1601.9 ("A charge shall be in writing and signed and shall be verified."). The verification requirement is mandatory, and failure to properly verify an EEOC charge may bar a plaintiff from litigating her claim pursuant to Title VII. *See Vason v. City of Montgomery,* 240 F.3d 905, 907 (11th Cir. 2001) (affirming summary judgment in employer's favor where plaintiff failed to make her charge of discrimination under oath or affirmation). To be verified, a charge must be "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a) (2000).

"[A]s a general matter, an intake questionnaire is not intended to function as a charge" for purposes of exhaustion. *Pijenburg v. West Ga. Health Sys., Inc.,* 255 F.3d

1304, 1307 (11th Cir. 2001); *Vason*, 240 F.3d at 907 (holding that a letter sent to the EEOC that "was not under oath or affirmation," and which the plaintiff never attempted to verify later through amendment, could not be considered a charge because 42 U.S.C. § 2000e-5(b) "mandates that charges be made under oath or affirmation."). This is because, unlike a formal EEOC charge, an intake questionnaire does not notify the employer that a discrimination charge has been filed with the EEOC, nor does it initiate the EEOC's investigation of a complaint. *See Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1240 (11th Cir. 2004). However, in *Wilkerson v. Grinnell Corp.*, the Eleventh Circuit held, under certain circumstances, that an intake questionnaire may satisfy the requirements of an EEOC charge. 270 F.3d 1314, 1321 (11th Cir. 2001) (holding that an intake questionnaire, which was verified and contained more than minimally sufficient charging information, constituted a valid charge). In discussing whether an intake questionnaire should be considered a charge under Title VII, the Circuit looked at whether a "reasonable person" would believe that the intake questionnaire completed by the plaintiff displayed the "intent to activate the machinery of Title VII" and the EEOC. *Id.* at 1320. But, the court cautioned that it would "not treat intake questionnaires willy-nilly as charges." *Id.*

Similar to the intake questionnaire in *Wilkerson*, the Intake Questionnaire submitted by Plaintiff could be confused in some respects with an EEOC charge. *Wilkerson*, 270 F.3d at 1320–21. On the Questionnaire, Plaintiff checked a box that contained, in part, the following statement: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." Doc. 48 at 21. Arguably, a "reasonable person" could believe this statement would "activate the machinery of Title VII" and the

EEOC charging process.  *See Wilkerson,* 270 F.3d at 1320-21.  Also, the Intake Questionnaire completed by Plaintiff was "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29 C.F.R. § 1601.12(b) (2011).  Thus, it possessed several qualities considered by the *Wilkerson* court that favor treating it as a formal charge for the purposes of administrative exhaustion.

However, the similarities end there.  First, and importantly, Plaintiff's Intake Questionnaire is not verified as required by § 2000e-5(b).  Second, the language on the form alerts Plaintiff to its intended, limited purpose.  In the opening paragraph, the form states: "Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission[.]  REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law[.] . . . Upon receipt, this form will be reviewed to determine EEOC coverage."  Doc. 48 at 18.  This language indicates that the form does not constitute a formal charge, but instead is used to determine the EEOC's coverage of Plaintiff's complaint(s).  Third, prior to the box indicating a wish to file a charge of discrimination, the form states: "Please check one of the boxes below to tell us what you would like us to do with the information[.]  If you would like to file a charge of job discrimination, you must do so . . . within 180 days from the day you knew about the discrimination[.]"  *Id.* at 21.  This language indicates that Plaintiff must take additional action outside of the action taken in submitting the Questionnaire in order to file an EEOC charge.

The undersigned recognizes that, although he does not include the actual document, Plaintiff alleges in his second amended complaint that he filed a "*Charge* of

Discrimination" with the EEOC on November 24, 2015, as to charge number 420-2016-00475. Doc. 48 at 5, ¶ 16 (emphasis added). Interestingly, this date is two days after Plaintiff completed the Intake Questionnaire, which he did include with his complaint. The date discrepancy between Plaintiff's assertion and the Intake Questionnaire could indicate that Plaintiff filed an EEOC charge after he completed the Questionnaire. However, information before the undersigned—including information provided by Plaintiff himself—undermines this theory, leading the undersigned to conclude that the difference in dates is simply a scrivener's error.

First, in the undersigned's order permitting and directing Plaintiff to file a second amended complaint, the undersigned specifically stated: "Plaintiff is to file an amended complaint . . . setting forth Plaintiff's claims and attaching all relevant [EEOC] documents, including any EEOC complaints that form the basis of Plaintiff's claims along with any right-to-sue letters pertaining to those complaints." Doc. 47 at 1. Plaintiff did not submit a document purporting to be signed on November 24, 2015, along with his second amended complaint. Instead, Plaintiff attached only his Intake Questionnaire, signed on November 22, 2015. Further, Plaintiff makes no assertion in his second amended complaint that he has been unable to locate any EEOC documents pertinent to his Title VII suit, or that such documents would be forthcoming at a later date. Nor does Plaintiff make such an assertion in his motion for an extension of time to file a response in opposition to Defendants' currently pending motion to dismiss. Thus, the undersigned must conclude, based upon his order directing Plaintiff to file all relevant EEOC documents and without any assertions

from Plaintiff otherwise, that the Intake Questionnaire is the sole basis for EEOC charge number 420-2016-00475.

Second, Plaintiff's original counsel filed a response in opposition to Defendants' motion to dismiss Plaintiff's first amended complaint, which was thirty-eight days late. *See* Doc. 33. Although the undersigned has already stated he will not consider the arguments presented in that document because of its untimeliness, the factual assertions provided there are particularly enlightening to whether a formal charge was filed. In that document, Plaintiff states: "[o]n or about November 20, 2015, Plaintiff telephoned the EEOC to file a Charge of (Retaliatory) Discrimination[.] In response to his request[,] he was directed by the EEOC to complete a Questionnaire[,] which he did." *Id*. at 3-4. Plaintiff also includes an affidavit, indicating that he did not file a "Form 5" from the EEOC, which would presumably be the form filed to constitute a formal charge. *Id*. at 12. Instead, Plaintiff states that he "fully intended the questionnaire to be a Charge of Discrimination[,]" and that "[t]he entire 4 ½ months [his] complaint (written on the questionnaire form) was pending at EEOC, [he] was under the impression that the questionnaire had been accepted as a Charge." *Id*.

While the undersigned does not necessarily dispute Plaintiff's intent to have the Questionnaire constitute a formal charge, the undersigned must apply a reasonable person standard to whether the Intake Questionnaire constitutes a formal charge. As discussed above, the undersigned concludes that the language from the form indicates that Plaintiff was required to do more than simply submit the Intake Questionnaire to file a formal charge with the EEOC. Further, because Plaintiff's Intake Questionnaire is not notarized or signed

under penalty of perjury, the undersigned cannot conclude that the form complies with the statutory verification requirements. *See Wilkerson*, 270 F.3d at 1321 (holding that a *verified* intake questionnaire constituted a charge under certain circumstances); *Pijenburg*, 255 F.3d at 1307 (holding that an intake questionnaire, *which was not sworn*, did not constitute a charge). Finally, Plaintiff states in his affidavit that he did not call to follow-up with the EEOC regarding what he presumed to be a formal charge because of his prior experience with the EEOC. *Id.* Plaintiff's lack of initiative in contacting the EEOC could support his assertion that he genuinely believed he had initiated the process; however, it is ultimately unavailing. Indeed, someone who has previous experience in filing EEOC charges, and therefore familiarity with the process, is undoubtedly less likely to reasonably believe that his unverified Intake Questionnaire constitutes a formal charge. And, as noted above, while the standard applied is a "reasonable person" standard—not a reasonable person similarly-situated to Plaintiff—Plaintiff would likely possess more knowledge about how to initiate an EEOC charge than the average, reasonable individual.

Accordingly, the undersigned concludes that Plaintiff did not file a formal charge with the EEOC, and that his Intake Questionnaire cannot be considered a formal charge for the purposes of the administrative exhaustion requirement. As such, Plaintiff has failed to exhaust his administrative remedies as to his Title VII claim, and that claim should be dismissed.

### C. Count Two: Plaintiff's 42 U.S.C. § 1983 Claims Against the Individual Defendants in Their Individual Capacities.

Plaintiff asserts 42 U.S.C. § 1983 claims against the individual Defendants in their individual capacities for the "deprivation of Plaintiff's federal statutory rights." Doc. 48 at 11-14. Plaintiff alleges he is "afforded Constitutional protection to protest employment discrimination on the basis of disability and retaliation and the Rehabilitation Act, pursuant to the 4th, 5th[,] and 14th Amendments of the United States Constitution." *Id*. at 11-12, ¶ 57. Further, Plaintiff alleges he is "afforded a statutory right to protest employment discrimination on the basis of disability and retaliation under the Rehabilitation Act and under Title VII of the Civil Rights Act of 1964[.]" *Id*. at 12, ¶ 58.

Plaintiff summarizes his allegations against the individual Defendants within count two as follows: the individual Defendants harassed him, threatened him with termination, falsely accused him of workplace violence, artificially deflated his performance appraisal (which resulted in Plaintiff not receiving his annual salary increase), and reprimanded him (which resulted in Plaintiff not receiving a promotion). Doc. 48 at 12, ¶ 58. Plaintiff states this conduct was in retaliation for his complaints "of discrimination on the basis of disability" through his previously filed "Charge of Discrimination" with the EEOC. *Id*. at 12-13, ¶ 59. Plaintiff alleges he suffered a tangible job detriment at the hands of Defendants Woodham and Dukes after they "directed Plaintiff to be suspended based on allegations made by the individuals who victimized Plaintiff." *Id*. at 13, ¶ 61. He also states Defendant Hampton[13] "ordered that Plaintiff not receive an annual raise[.]" *Id*. at 13, ¶ 62. Plaintiff alleges Defendants Cooper, Dukes, and/or Woodham either ratified the decisions of the

---

[13] Plaintiff identifies Defendant Hampton as Defendant "Hamilton." However, this identification appears to be a scrivener's error, as Plaintiff has not mentioned a Defendant Hamilton elsewhere in his complaint.

other Defendants, or took no steps to correct their conduct, despite Plaintiff's protests. *Id*. at 13, ¶¶ 63, 64, 65.

The individual Defendants argue qualified immunity protects them in their individual capacities because the § 1983 claims against them lack the specificity to overcome the qualified immunity defenses. Doc. 30 at 8-9. Particularly, Defendants argue Plaintiff has not sufficiently alleged a violation of *any* constitutional right, and, as such, "it is axiomatic that [Plaintiff] likewise has failed to allege the violation of a clearly established right." *Id*. at 9 (citing *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998)).

Qualified immunity protects "government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order for government officials to enjoy qualified immunity, they must first establish that they were acting within the scope of their discretionary authority when the alleged wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Once it has been determined that an official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate, by showing that the official violated clearly established constitutional law. *Id*. "Whether a constitutional right was 'clearly established' at the time of the violation turns on whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Gray ex rel. Alexander v. Bostic,* 458 F.3d 1295, 1306 (11th Cir. 2006)

(internal quotation omitted). Courts "recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert v. Lee Cty.,* 510 F.3d 1312, 1330 (11th Cir. 2007).

The United States Supreme Court "has repeatedly stressed the importance of resolving qualified immunity questions at the earliest possible stage in litigation." *Bloom v. Alvereze*, 498 F. App'x 867, 878 (11th Cir. 2012) (citing *Pearson*, 555 U.S. at 232). While qualified immunity is typically addressed at summary judgment, it may be raised on a motion to dismiss and granted if the plaintiff's complaint fails to allege the violation of a clearly established constitutional right. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Marsh v. Butler Cty.*, 268 F.3d 1014, 1023 (11th Cir. 2001) (en banc) ("We apply the qualified immunity defense to dismiss a complaint at the 12(b)(6) stage where, (1) from the face of the complaint, (2) we must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim—given the alleged circumstances—was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted."). When qualified immunity is asserted as a defense in a Rule 12(b)(6) motion, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined," *GJR Invs., Inc.*, 132 F.3d at 1366. This requires the complaint to contain "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity," in order to survive. *Dalrymple v. Reno,*

334 F.3d 991, 996 (11th Cir. 2003); *see also Staco v. Miami-Dade Cty.,* 536 F. Supp. 2d 1301, 1304 (S.D. Fla. 2008) ("[A] claim can be dismissed where a plaintiff pleads facts or makes admissions that demonstrate that a defense is applicable on the face of the pleadings."). Notably, qualified immunity represents the rule, rather than the exception: "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Ala. A&M Univ., Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir. 1994).

Defendants state that "[t]hey were at all time[s] acting within their discretionary authority." Doc. 30 at 9, ¶ 16. Clearly, decisions to suspend an employee and to not award an employee a pay raise are discretionary functions for individuals like Defendant Woodham (Assistant Director of Administration for ALDOT), Defendant Dukes (Human Resources Representative for ALDOT), and Defendant Hampton (ALDOT's Bureau Chief). Plaintiff, in responding to Defendants' first motion to dismiss (which raised the defense of qualified immunity), did not challenge this assertion.[14] *See* Doc. 26. Having heard no opposition from Plaintiff, and considering the actions taken by Defendants Woodham, Dukes, and Hampton within their roles as employees of ALDOT, the undersigned concludes that Defendants were acting within their discretionary authority for the purposes of qualified immunity.

---

[14] Again, although the undersigned is not considering the arguments presented in Plaintiff's response in opposition to Defendants' second motion to dismiss (as it was thirty-eight days late), the undersigned notes that Plaintiff did not challenge, after being presented with the argument, that Defendants were acting within their discretionary authority. *See* Doc. 33.

In order to determine if Plaintiff's complaint alleges a violation of clearly established law, it is important to first narrow the conduct of which Plaintiff complains and determine which source(s) of law have been violated, if any, by that conduct. Plaintiff asserts he has a right to be free from employment discrimination and retaliation practices pursuant to several constitutional amendments and two federal statutes. However, it is clear from Plaintiff's complaint that he protests his right to be free from retaliation—not discrimination based upon race, gender, or disability.[15] *See generally* Doc. 48 at 12-14. He asserts that his right to be free from retaliation is founded upon the Fourth, Fifth, and Fourteenth Amendments, as well as Title VII and the Rehabilitation Act. Importantly, Plaintiff has been represented by counsel throughout this litigation, and, presumably, his counsel drafted each of his complaints. Plaintiff's current complaint—his second amended—was drafted *after* Defendants filed their motions to dismiss, the second of which

---

[15] Plaintiff generally alleges he has a statutory right to protest employment discrimination on the basis of disability, but provides no facts to suggest he was discriminated against because of a disability. Indeed, Plaintiff does not allege he has a disability, much less what that disability is. Similarly, Plaintiff fails to allege the individual Defendants discriminated against him because of his race or his gender. Instead, Plaintiff focuses on the actions of the individual Defendants that he describes as *retaliatory*. *See id*. at 12, ¶ 59 ("Plaintiff was *retaliated* against by ALDOT, and various co-employers . . . .") (emphasis added); *id*. at 13, ¶ 60 ("The *retaliation* continued . . . .") (emphasis added); *id*. at 13, ¶ 61 ("In addition to the several instances of *retaliatory* actions, Plaintiff suffered a tangible job detriment . . . .") (emphasis added); *id*. at 13, ¶ 63 ("Further, Cooper and Woodham were aware of Plaintiff's disability *retaliation* . . . .") (emphasis added); *id*. at 13, ¶ 65 ("Plaintiff . . . met with them to discuss the *retaliation*.") (emphasis added); *id*. at 13, ¶ 66 ("Cooper, Dukes and Woodham were all acting under color of state law when they deprived the Plaintiff of his constitutional right to be free from *retaliation*[.]")(emphasis added). Similarly, in Plaintiff's "Statement of Facts," he references the retaliatory conduct of the individual Defendants, not discriminatory conduct. *Id*. at 7, ¶ 31 ("Defendants were acting under color of law when they deprived the Plaintiff of his guaranteed statutory right to be free from *retaliation*.") (emphasis added). Thus, as Plaintiff is the master of his complaint, the undersigned construes Plaintiff's § 1983 claims against the individual Defendants in their individual capacities to be based upon retaliation, not discrimination. Such distinction is important when considering whether Plaintiff has alleged a violation of federal law sufficient to support § 1983 claims against the individual Defendants.

argued that Plaintiff failed to allege a violation of any constitutional right or statutory law. Accordingly, Plaintiff was on notice prior to filing the second amended complaint that the individual Defendants would seek dismissal based upon this ground. Therefore, while the undersigned will construe all facts alleged in Plaintiff's second amended complaint in his favor and will draw all reasonable inferences therefrom, the undersigned will not construct Plaintiff's claims for him, or construe them to be different than what he alleges.

With this in mind, the undersigned turns to Plaintiff's second amended complaint. Plaintiff asserts he has a right to be free from retaliation pursuant to the Fourth, Fifth, and Fourteenth Amendments. Doc. 48 at 11-12, ¶ 57. While courts have repeatedly held that there is a clearly established right to be free from retaliation under the First Amendment and Title VII, there is no similar protection afforded by the Equal Protection Clause. *See, e.g., Ratliff v. DeKalb Cty., Ga.*, 62 F.3d 338, 340-41 (11th Cir. 1995) (concluding that the Equal Protection Clause does not clearly establish a right to be free from workplace retaliation). Thus, to the extent Plaintiff's § 1983 retaliation claims against the individual Defendants in their individual capacities are based upon violations of the Equal Protection Clause, Plaintiff fails to allege a constitutional violation to support a § 1983 claim. As to Plaintiff's assertions that he has the right to be free from retaliation pursuant to the Fourth Amendment and, presumably, the Due Process Clause, the undersigned is perplexed. Even if those amendments were held to provide protections from workplace retaliation, Plaintiff asserts no facts to indicate that the conduct of the individual Defendants violates those

rights.[16]  Further, the undersigned will not speculate whether those constitutional provisions establish a right to be free from workplace retaliation.  Thus, to the extent Plaintiff's § 1983 claims against the individual Defendants in their individual capacities are based upon violations of the Fourth Amendment or the Due Process Clause, Plaintiff fails to allege a constitutional violation to support a § 1983 claim.

In addition to the constitutional protections cited above, Plaintiff also asserts he has a right to be free from retaliation pursuant to federal law—namely, Title VII and the Rehabilitation Act.  Doc. 48 at 12, ¶ 58.  Both Title VII and the Rehabilitation Act provide protections against workplace retaliation when an employee protests the actions of his employer that violate the respective statutes.  Title VII's antiretaliation provision "forbids employer actions that 'discriminate against' an employee . . . because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'"  *Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S. 53, 59 (2006) (citing § 2000e-3(a).  Similarly, the Rehabilitation Act's antiretaliation provision incorporates the antiretaliation provision from § 12203(a) of the Americans with Disabilities Act ("ADA"), which states "[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this chapter."  42 U.S.C. § 12203(a); *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243, 245 (11th Cir. 2011).

---

[16] In general, the Fourth Amendment protects against unreasonable searches and seizures, and the Due Process Clause protects against arbitrary denials of life, liberty, or property by the Government.

To state a claim for retaliation under the Rehabilitation Act or under Title VII,[17] a plaintiff must show: (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action; and (3) there was some causal relationship between the two events. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (2008); *Burlington*, 548 U.S. at 53 (holding that the type of employer conduct considered actionable has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related).

Plaintiff alleges he engaged in statutorily protected expression by filing EEOC Charge 846-2012-13854. Doc. 48 at 5, ¶¶ 15, 16. He also alleges he "suffered a tangible job detriment" based upon the following actions: (1) Plaintiff was suspended by Defendants Woodham and Dukes, and (2) Plaintiff did not receive an annual raise in 2015. *Id*. at 13, ¶¶ 61, 62. The undersigned will assume *arguendo* that Plaintiff has alleged facts to satisfy the first two requirements for a retaliation claim,[18] and will only address whether Plaintiff has alleged a causal relationship between the two.

---

[17] Retaliation claims pursuant to the Rehabilitation Act are assessed under the framework used in assessing Title VII retaliation claims. *See Ellis v. England,* 432 F.3d 1321, 1323–24 (11th Cir. 2005) (discussing the procedures for a federal employee to raise disability claims under the Rehabilitation Act).

[18] The filing of an EEOC charge is a "statutorily protected activity," and satisfies the first element. *Burgos-Stefanelli,* 410 F. App'x at 246 (citing *Donnellon v. Fruehauf Corp*., 794 F.2d 598, 600 (11th Cir. 1986)). An unfavorable performance review leading to an employee not receiving an annual pay increase is considered a materially adverse action under Title VII. *See Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (holding that the plaintiff suffered a materially adverse action in the form of an unfavorable performance review that affected her eligibility for a merit pay increase after she complained of racial discrimination).

As stated above, in order to maintain a viable retaliation claim, a plaintiff must show that there is a causal relationship between his engagement in statutorily protected activity and the materially adverse action taken against him. *Goldsmith*, 513 F.3d at 1277. A plaintiff may satisfy this causal connection by showing that "the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). "It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression." *Bass v. Bd of Cty. Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001). Absent other evidence, a "[c]lose temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated." *Id*. at 1119.

The decision-makers here, according to Plaintiff, are Defendants Woodham and Dukes (who suspended Plaintiff), and Defendant Hampton (who ordered that Plaintiff not receive his 2015 raise). Suffice it to say, Plaintiff has not alleged these individuals knew he engaged in protected activity by filing an EEOC Charge in 2012.[19] Accordingly, Plaintiff has not alleged facts showing that any individual Defendant who took adverse action against Plaintiff was aware of his protected expression. Nonetheless, even if

---

[19] To be sure, Plaintiff asserts that Defendants Cooper and Woodham "were aware of Plaintiff's disability retaliation," and that he notified Defendants Cooper, Dukes, and Woodham "in writing and on occasion met with them to discuss the retaliation." Doc. 48 at 13, ¶¶ 63, 65. However, these facts do not indicate knowledge of Plaintiff's engagement in protected activity, as Plaintiff merely alleges that he complained to them of disability retaliation—not retaliation for filing a previous Charge.

Plaintiff could show the individual Defendants were aware of the Charge, Plaintiff must also show that his engagement in protected activity and the adverse actions taken against him were not wholly unrelated. *Shannon*, 292 F.3d at 716. When temporal proximity is used to establish a causal connection, the proximity must be "very close." *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (citation omitted). The Eleventh Circuit has found that "in the absence of any other evidence of causation," like here, a three-month proximity "between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." *Drago v. Jenne,* 453 F.3d 1301, 1308 (11th Cir. 2006); *see also Davis v. Coca–Cola Bottling Co.,* 516 F.3d 955, (11th Cir. 2008) (confirming the district court's determination that a five-month gap between EEOC charge and adverse employment action are insufficient to establish causal connection).

Here, Plaintiff filed his 2012 EEOC Charge on August 13, 2012. Doc. 1 at 5. Although it is unclear from Plaintiff's complaint the exact date of his suspension, it appears that the denial of his annual pay raise occurred in May 2015.[20] Clearly, an almost three-year gap between Plaintiff's engagement in protected activity and the adverse action taken against him is not sufficient to establish a close temporal proximity. Further, while the exact time between Plaintiff's EEOC filing and his suspension is unknown (because it is not asserted), it is evident from a natural reading of Plaintiff's complaint that the suspension occurred in December 2014. Plaintiff's EEOC Intake Questionnaire states that he was

---

[20] A review of Plaintiff's EEOC Intake Questionnaire that was filed along with his second amended complaint states that the date upon which he did not receive his pay raise due to a "meets standards" performance evaluation was May 26, 2015. Doc. 48 at 19.

falsely accused of workplace violence on or around December 16, 2014. Doc. 48 at 19.

He states in his complaint that a hearing was held in December 2014 clearing Plaintiff of

the accusations. *Id*. at 8, ¶ 39. Plaintiff links his suspension to the accusation of workplace

violence. *Id*. at 8, ¶ 37 ("Shortly after filing the Charge of Discrimination[,] Plaintiff was

falsely accused of Workplace Violence by his supervisor, [Defendant] Rowe, and

wrongfully suspended."). Accordingly, it stands to reason that if Plaintiff was accused of

workplace violence on or around December 16, 2014, and a hearing was held that same

month that cleared him of the accusation, his suspension related to the accusation occurred

during that time as well. That being so, a two-and-a-half-year gap between the filing of

the 2012 EEOC Charge and his suspension is not sufficient to establish a close temporal

proximity, as required by the Eleventh Circuit. Accordingly, Plaintiff has failed to allege

the third element of a retaliation claim—i.e., that there was a causal connection between

the events.

To the extent Plaintiff is alleging the individual Defendants created a retaliatory

hostile work environment and is basing his § 1983 claims against the individual Defendants

upon that, Plaintiff must show that the actions of Defendants created an environment that

a reasonable person would find hostile or abusive and an environment that the victim

subjectively perceives to be abusive. *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir.

2012). In evaluating the objective prong of the harassment, the court looks at the totality

of the circumstances and considers, among other things: "(1) the frequency of the conduct;

(2) the severity of the conduct; (3) whether the conduct is physically threatening or

humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably

interferes with the employee's job performance." *Id*. Discrete acts cannot alone form the basis of a hostile work environment claim, but the discrete acts may be considered collectively to determine if the environment was hostile. *Id*. at 1312-1313.

The undersigned concludes that Plaintiff's facts do not meet the objective prong for a retaliatory hostile work environment. In particular, the undersigned takes issue with the frequency and severity of the conduct alleged. While Plaintiff alleges generally that the environment was hostile, pervasive, and severe, Plaintiff only lists a few examples of retaliatory conduct that occurred over the span of several years. Indeed, Plaintiff cites to threats of termination if he did not complete a work-related report, an accusation of workplace violence that was later resolved by a hearing, a deflated performance appraisal that caused him to not receive his annual pay raise, and a verbal reprimand that resulted in him not receiving a promotion. These facts, many of which are discrete acts that occurred between 2012 and 2015, simply do not satisfy the requirements for the creation of a retaliatory hostile work environment, even when considered as a whole. *See McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (as opposed to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," a hostile work environment claim addresses acts "different in kind" whose "very nature involves repeated conduct," such as "'discriminatory intimidation, ridicule and insult.'").

Plaintiff's complaint fails to allege facts, taken in the light most favorable to him, to indicate the individual Defendants retaliated against him in violation of his rights under Title VII or the Rehabilitation Act. Because Plaintiff has failed to allege that the individual Defendants' conduct violated federal law, Plaintiff cannot overcome the defense of

qualified immunity.  Accordingly, the undersigned recommends that the § 1983 claims, based upon retaliation and a retaliatory hostile work environment, against the individual Defendants in their individual capacities be dismissed.

### D.  Count Three: Plaintiff's Claim for Civil Conspiracy

Count Three of Plaintiff's second amended complaint alleges a civil conspiracy claim.  *See* Doc. 48 at 14.  Plaintiff's pleading of the claim is woefully insufficient to satisfy the pleading standard under the Federal Rules of Civil Procedure.  Plaintiff's entire civil conspiracy claim states (after incorporating the previous paragraphs by reference):

> Defendant John Cooper, Defendants Dukes, Hampton, Rowe, and Woodham acting in concert, conspired to suppress the unwarranted and unlawful conduct of Defendant manager by tampering with evidence and proffering same to be used in an administrative and judicial tribunal.  Said conspiracy was entered into with the specific intent to cover up the violations of Plaintiff's civil rights, pursuant to the 4th, 5th[,] and 14th Amendments of the United States Constitution.

Doc. 48 at 14, ¶ 70.

In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must as a threshold matter provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Bell Twombly,* 550 U.S. at 555.  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Id.* "Stated differently, the factual allegations in a complaint must 'posses enough heft' plausibly to suggest that the pleader is entitled to relief." *Weissman v. Nat. Assoc. of Sec. Dealers, Inc.,* 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 557).

"Although Rule 9(b) does not list conspiracy as a cause of action which must be pled with particularity, a complaint will be dismissed where the allegations are conclusory and vague." *Primerica Fin. Servs., Inc. v. Mitchell,* 48 F. Supp. 2d 1363, 1369 (S.D. Fla. 1999) (citing *Fullman v. Graddick,* 739 F.2d 553, 557) (11th Cir. 1984)). "The crux of the matter is that the defendants must be put on notice as to the nature of the conspiracy alleged to exist." *Jackson v. BellSouth Telecomm., Inc.,* 181 F. Supp. 2d 1345, 1363 (S.D. Fla. 2001). Otherwise, the claim may be dismissed.

Here, Plaintiff's assertions are nothing more than vague and conclusory. Indeed, Plaintiff bases the conspiracy upon the Defendants' desire to "suppress the unwarranted and unlawful conduct of Defendant manager by tampering with evidence and proffering [the evidence] to be used in an administrative and judicial tribunal." Doc. 48 at 14, ¶ 70. Notably, Plaintiff does not assert (1) the nature of the evidence tampered with; (2) how the tampering occurred; (3) when the tampering occurred; (4) how the tampered evidence was different than the original evidence; (5) which "administrative and judicial tribunal" was prevented from receiving the correct evidence; or (6) for what purpose the tribunal was receiving it. These missing pieces reveal the vague and conclusory nature of Plaintiff's assertion. A review of the prior portions of Plaintiff's complaint does not save the deficiencies. Indeed, despite a careful reading of Plaintiff's complaint, the undersigned, and likely Defendants, are left fill in substantial gaps and to wonder—what is Plaintiff alleging? Accordingly, Plaintiff's civil conspiracy claim should be dismissed for failure to satisfy the pleading standards under the Federal Rules.

In addition to the claim's factual pleading deficiencies, the claim lacks clarification as to which legal route for conspiracy Plaintiff intends to pursue. Does Plaintiff wish to pursue a civil conspiracy claim pursuant to 28 U.S.C. § 1983, 42 U.S.C. § 1985, or under Alabama common law? Regardless of the answer, Plaintiff fails to state a claim, as set forth below.

"A prima facie case of conspiracy under § 1983 requires (1) a violation of the plaintiff's federal rights and (2) an agreement among the defendants to violate those rights." *Newsome v. Lee Cty., Ala,* 431 F. Supp. 2d 1189, 1202 (11th Cir. 2006) (citing *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir. 1990)). Here, the undersigned has concluded that Plaintiff's federal rights have not been violated, as discussed more fully in Section C. Thus, because there has been no underlying violation of Plaintiff's constitutional rights, Plaintiff cannot maintain a claim for civil conspiracy under § 1983. *Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1260 (11th Cir. 2010) ("A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed *that resulted in the actual denial of some underlying constitutional right*.") (emphasis added); *Bendiburg*, 909 F.2d at 468 ("[T]he plaintiff must prove an actionable wrong to support the conspiracy.").

Forty-two U.S.C. § 1985 also provides relief for plaintiffs aggrieved by individuals who conspire to interfere with their civil rights.[21] A conspiracy claim asserted pursuant to

---

[21] Sections one and two of § 1985 are not applicable here. Forty-two U.S.C. § 1985(1) relates to conspiracies preventing *federal officers* from performing their duties, *see Morast v. Lance*, 807 F.2d 926, 929 (11th Cir. 1987), and § 1985(2) relates to conspiracies to obstruct justice by intimidating a witness or party in a court proceeding, *id*. at 930.

§ 1985(3) requires a plaintiff to show: "(1) a conspiracy; (2) for the purposes of depriving . . . any person or class of persons of the equal protection of the laws . . .; and (3) an act in furtherance of the conspiracy; (4) whereby a person is [injured] . . . or deprived of any right or privilege of a citizen of the United States." *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 970 F.2d 785, 793-94 (11th Cir. 1992). Importantly, § 1985(3) protects "any person or class of persons of the equal protection of the laws[.]" Clearly, then, a conspiracy motivated by race-based animus against an African American man, like Plaintiff, would be actionable under § 1985(3). However, Plaintiff has not alleged facts, even when construed in the light most favorable to him, to suggest the individual Defendants were conspiring against him with race-based—or any other type of class-based —animus. Nowhere does Plaintiff allege that Defendants targeted him, discriminated against him, or attempted to prevent him from receiving equal protection under the law because of his race, gender, or disability. Thus, because Plaintiff has failed to allege the individual Defendants engaged in a conspiracy against him because of some class-based animus, Plaintiff cannot maintain a conspiracy claim under § 1985(3).

Finally, a civil conspiracy under Alabama common law "requires a combination of two or more individuals to accomplish a lawful end by unlawful means." *Nelson v. Univ. of Ala. Sys.*, 594 So. 2d 632, 634 (Ala. 1992). Similar to the requirements for stating a conspiracy under § 1983, in order to state a conspiracy claim under Alabama common law, a plaintiff must first show he has a viable underlying cause of action. *Callens v. Jefferson Cty. Nursing Home*, 769 So. 2d 273, 280 (Ala. 2000) ("A plaintiff alleging a conspiracy must have a valid underlying cause of action."); *Drill Parts & Serv. Co., Inc. v. Joy Mfg.*

*Co., et al.*, 619 So. 2d 1280, 1290 (Ala. 1993) (holding that conspiracy is not an independent cause of action; therefore, when alleging a conspiracy, a plaintiff must have a viable underlying cause of action). As previously noted, Plaintiff's federal rights have not been violated based upon the facts he alleged.[22] Thus, because there has been no underlying violation of Plaintiff's rights, Plaintiff cannot maintain a claim for civil conspiracy under Alabama common law.

In summary, Plaintiff's pleading of civil conspiracy does not satisfy the Federal Rules of Civil Procedure because it fails to provide sufficient factual information by which Defendants are placed on notice as to the nature of the conspiracy claim against them. Also, to the extent Plaintiff is asserting his civil conspiracy claim based upon §1983 and/or Alabama common law, there is no viable underlying cause of action to maintain the claim. To the extent Plaintiff is asserting the claim based upon § 1985(3), he does not allege that the Defendants conspired to deprive him of equal protection under the law due to class-based animus. Accordingly, the undersigned recommends that Plaintiff's claim for civil conspiracy be dismissed.

### E. Count Four: Plaintiff's State-Law Claim for Defamation: Slander/Lible

This court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. Jurisdiction over Plaintiff's remaining state law claims comes under the

---

[22] Plaintiff's conspiracy claim does not appear to be based upon violations of Alabama law—i.e., Plaintiff's defamation claim—as Plaintiff has not alleged that Defendants *conspired* to defame, degrade, or injure his reputation. Further, the conspiracy claim is asserted against all Defendants, while the state-law defamation claim names misconduct only from Defendants Rowe and Hampton. Presumably, therefore, the viability of Plaintiff's conspiracy claim under Alabama law would hinge upon the existence of federal violations, and not violations of Alabama law.

doctrine of supplemental or pendent jurisdiction outlined in *United Mine Workers of America v. Gibbs,* 383 U.S. 715 (1966), and codified in 28 U.S.C. § 1367, which states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Thus, § 1367(a) authorizes a court to hear supplemental claims to the full extent allowed by the "case or controversy" standard of Article III of the Constitution. *Palmer v. Hosp. Auth. of Randolph Cty.,* 22 F.3d 1559, 1566 (11th Cir. 1994). The constitutional "case or controversy" standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim. *Gibbs,* 383 U.S. at 725 (1966); *Palmer,* 22 F.3d at 1563-64 (a federal court has the power under § 1367(a) to exercise pendent jurisdiction over state claims which arise from the same occurrence and involve the same or similar evidence); *L.A. Draper & Son v. Wheelabrator-Frye, Inc.,* 735 F.2d 414, 427 (11th Cir. 1984) (a federal court may exercise pendent jurisdiction over state law claims deriving from a common nucleus of operative fact with a substantial federal claim).

In this case, Plaintiff's § 1983 and Title VII claims are the "substantial federal claims," and they arise out of a common nucleus of operative fact as the state claims—i.e., Plaintiff asserts that the conduct of Defendants that violates state law and is defamatory is the same conduct that violates federal law and is retaliatory. Therefore, this court has

power to exercise supplemental jurisdiction over those state law claims; however, the question remains: should it?

According to 28 U.S.C., § 1367(c), a district court has discretion to decline to exercise supplemental jurisdiction over a claim in four situations:

> (1) the claim raises a novel or complex issue of state law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006). Whenever a federal court has supplemental jurisdiction under § 1367(a), that jurisdiction should be exercised unless § 1367(b) or (c) applies.[23] *Palmer,* 22 F.3d at 1569. Any one of the § 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims. *Id.* The Eleventh Circuit has stated a policy in favor of dismissing state law claims under these same circumstances. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." (citations omitted))

---

[23] Twenty-eight U.S.C. § 1367(b) does not apply because it deals with diversity jurisdiction under 28 U.S.C. § 1332.

In this case, the undersigned recommends that the court decline to exercise supplemental jurisdiction over Plaintiff's state law claims because, if the court accepts the undersigned's recommendation to dismiss counts one through three, no claims would remain over which the court has original jurisdiction. Accordingly, the third exception would apply.

## IV. CONCLUSION

For all of the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendants' Motion to Dismiss (Doc. 49), as construed, be GRANTED. The undersigned

RECOMMENDS that Plaintiff's second amended complaint (Doc. 48) be DISMISSED in its entirety. Further, the undersigned

RECOMMENDS that Defendants' Motion to Dismiss (Doc. 22) Plaintiff's original complaint and Defendants' Motion to Dismiss (Doc. 30) Plaintiff's first amended complaint be DENIED as MOOT.

It is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before August 16, 2017**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the

right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*). The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

DONE this 2nd day of August, 2017.


/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE